[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12157
Non-Argument Calendar

_____

D.C. Docket Nos. 8:17-cv-02161-VMC-CPT,
8:13-cr-00462-VMC-TBM-1

ERIC THOMAS,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 17, 2019)

Before MARCUS, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

Petitioner Eric Thomas appeals the district court's denial of his 28 U.S.C.

§ 2255 motion to vacate, set aside, or correct his sentence.  A judge of this Court

granted Thomas a certificate of appealability ("COA") on the following issue:

"Whether law enforcement's delay in obtaining a federal warrant to seize Mr. Thomas's computer violated his Fourth Amendment possessory interest in the device?"  After review, we affirm the district court's denial of Thomas's § 2255 motion.

## I. UNDERLYING CRIMINAL PROCEEDINGS

### A.    Initial Investigation and Indictment

On July 21, 2012, Thomas's then-wife, Caroline Olausen, called police after discovering suspected child pornography on one of their home computers.  At the time of the search, Thomas and Olausen were married and lived together in their marital home.  Olausen had access to and used the three household computers in Thomas's home office.  When officers first arrived at the house, Thomas was still sleeping.  Olausen gave the officers consent to search the three computers in Thomas's home office, and the officers began searches of those computers.

At some point, Thomas woke up, spoke to one of the officers, and ultimately revoked consent to search the computers.  The officers then seized all three computers from Thomas's home office, to be searched once a warrant was obtained.  On August 24, 2012, 33 days after the initial seizure, law enforcement obtained a federal search warrant for one of Thomas's computers, an HP desktop.[1]  The subsequent search of that HP desktop revealed more than 900 images of child pornography.

---

[1]Though the officers initially seized all three of Thomas's home computers, they sought and obtained a warrant only for the HP desktop.  Thomas does not challenge the seizure of the other two

In September 2013, a federal grand jury indicted Thomas on one count of knowingly accessing with intent to view child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2).  Thomas pled not guilty.

## B.    Thomas's Motion to Suppress

Prior to trial, Thomas moved to suppress the evidence gathered from the HP desktop computer.  Thomas challenged the search of the computer on several grounds, but did not argue that the 33-day delay in obtaining the warrant itself rendered the search invalid.  Specifically, Thomas argued that: (1) Olausen's uncorroborated statement that she saw child pornography on the HP desktop did not provide probable cause for the seizure of Thomas's computer; (2) Olausen's consent did not provide a basis for the seizure because Thomas revoked consent; (3) no other exception to the warrant requirement, such as plain view or exigent circumstances, justified the seizure of Thomas's computer in this case; and (4) the search of the computer was not supported by probable cause because the facts in the warrant affidavit were stale and unreliable.

A magistrate judge held three hearings on Thomas's motion to suppress.  The testimony at the suppression hearings revealed the following details about the July 21, 2012, initial search at Thomas's house and law enforcement's subsequent efforts to obtain a search warrant for the HP desktop.

---

computers.  Rather, his sole argument is that the delay in obtaining a search warrant for the HP desktop was unreasonable.

Officer Matt Steiner of the Largo Police Department testified that he was the first officer to arrive at Thomas's house on July 21, 2012, in response to Olausen's call. Upon arriving, Steiner spoke to Olausen, who told him that when she got home the night before, Thomas appeared nervous and had a racing heartbeat. Olausen then explained that, when she turned on the HP desktop computer that morning and opened Internet Explorer, she received a prompt asking if she wanted to restore the previous browsing session. Olausen clicked "yes," and eight to ten websites opened up. Olausen described the websites as containing images of prepubescent and pubescent girls, many of whom were naked and some of whom were performing oral sex on adult men.

Thomas was sleeping when Steiner arrived, so Steiner asked Olausen for consent to search the computers in the residence. Olausen told Steiner that Thomas primarily used the computers for his home business, but that she also had access to and used the computers. Olausen gave both verbal and written consent to search the computers. Olausen's written consent to the search included three computers—the HP desktop, a Dell desktop, and a Toshiba tablet—as well as a Maxtor internal hard drive, and allowed officers to remove any property from the home. Steiner looked at the HP desktop and saw two websites still open, "NNLollys" and "HDSchoolTeens." Both websites showed pictures of young girls wearing only their underwear, but did not depict any sexual activity.

4

Detective Nathan Dix, a cyber crimes detective for the Largo Police Department and task force agent with the Federal Bureau of Investigation's ("FBI") Child Exploitation Task Force, testified that he was the third officer to arrive at Thomas's residence on July 21, 2012. After receiving a briefing from the other officers on the scene, Dix took a quick look at the HP desktop before speaking to Olausen. Dix saw two open websites containing images that he described as "child erotica," as well as terms and links "indicative of child pornography," but no actual child pornography. Dix explained that "child erotica" refers to material that does not meet the legal definition of child pornography, but depicts children in a manner intended to provide sexual arousal to individuals who are sexually attracted to children. Dix testified that, in his experience, child erotica and child pornography are often comingled on websites, and he had "never had a subject with child pornography files on his computer that did not [also] have child erotica files on the computer." Dix also explained that the term "Lollys" in the "NNLollys" website is short for "Lolita," which is a common term used in child pornography to refer to young girls.

When Dix spoke to Olausen, she confirmed that she had given consent to search the computers. Olausen also reiterated the information she provided to Steiner earlier about Thomas's unusual behavior the night before, their household computers, and her discovery of the suspected child pornography that morning. Olausen told Dix that she saw images of children between the ages of 4 and 13, most of whom were nude. Olausen stated that some of the children were in "sex poses" or "being sexually

5

abused," and one of the images "depicted an adult male penis and a completely nude child's vagina." Dix testified that, based on Olausen's description, at least some of the images she saw were child pornography.

After speaking with Olausen, Dix began a forensic search of the Dell desktop to scan for video and image files. While Dix was analyzing the Dell desktop, Detective Corey Monaghan arrived and began a forensic analysis of the HP desktop using a program called OS Triage. At some point, Thomas woke up, and Monaghan left the room to interview Thomas. Dix remained in the home office, completed the scan of the Dell desktop, and began a scan of the Toshiba tablet.

About 40 to 45 minutes later, Monaghan returned to the office and informed Dix that Thomas had revoked consent to search the computers. Dix and Monaghan stopped their scans, but seized the computers because they had probable cause to believe there was or could be child pornography on the computers, and there was a "very high risk" that evidence could be destroyed if they left the computers in the residence. Dix acknowledged that neither of the scans he performed on the Dell desktop or the Toshiba tablet revealed any child pornography, but also explained that those scans were merely a "preliminary review" and not "a full forensic review."

Officer James Shinn of the Largo Police Department testified that when he arrived at Thomas's residence on July 21, 2012, Thomas was still asleep. Shinn's job was to keep watch and notify the investigating officers if Thomas woke up. When Thomas did wake up, Shinn stopped him from entering the home office and directed

6

him to the living room to speak with Detective Monaghan.  Shinn did not participate in the interview, but could hear Monaghan and Thomas's conversation.  Shinn heard Monaghan ask Thomas for consent to search the computers, and Thomas gave verbal consent.  Monaghan then asked Thomas to fill out a written consent form, and Thomas initially agreed.  As he started to fill out the form, however, Thomas asked to speak to Olausen.  Monaghan encouraged Thomas to finish filling out the consent form first, but Thomas began to equivocate and indicated he would not complete the form until he spoke to Olausen.  Monaghan left the room briefly to see if Olausen would speak to Thomas, but Olausen refused.  At that point, Thomas stated that his sister was a lawyer and he would like to speak with her, and Monaghan then ended the conversation.  Thomas never completed the written consent form.

Detective Monaghan, a cyber crimes agent for the Florida Department of Law Enforcement, testified that he was a member of the FBI's Innocent Images Task Force investigating online child exploitation.  When he arrived at Thomas's residence on July 21, 2012, Monaghan received a briefing from Dix, who told him that Olausen had consented to a search of the computers.  Monaghan then began running the OS Triage program on the HP desktop.  Monaghan saw the "NNLollys" and "HDSchoolTeens" websites on the HP desktop.  Monaghan described the "NNLollys" site as containing images of child erotica, as well as several links to other websites with names indicative of child pornography.

7

Monaghan explained that the OS Triage program he used to scan the HP desktop does two things: first, it collects the computer's internet history and "registry" files[2]; and second, it performs a scan of the computer's image and video files for key words indicative of child pornography. The first part occurs within the first minute of starting the program. Thus, Monaghan was able to begin reviewing the HP desktop's internet history shortly after starting the OS Triage program. Within the internet history, Monaghan saw websites with names indicative of child pornography. The second part, which Monaghan referred to as a "deeper search" can take several hours to complete. While that deeper search was running, Monaghan spoke to Olausen. Olausen gave Monaghan the same description of events that she gave to Detective Dix and Officer Steiner.

When Thomas woke up, Monaghan went into the living room to speak with him. Monaghan explained to Thomas that Olausen had called the police about suspected child pornography on his computer. Thomas denied viewing child pornography. When Monaghan asked him for consent to search the computer, Thomas said yes. Monaghan gave Thomas a written consent form, but Thomas stated that he wanted to speak to Olausen.

Monaghan went to ask Olausen if she would speak to Thomas, but she refused. When Monaghan returned and told Thomas that Olausen would not speak to him,

---

[2]Monaghan explained that the computer's registry "has data that the computer uses when it's trying to access different software programs."

Thomas stated that he would not sign the form without speaking to her.  Monaghan then tried to clarify with Thomas whether he was consenting to the search of the computers, and ultimately determined that Thomas was revoking his consent to search.  Accordingly, Monaghan went back to the home office, told Dix consent had been withdrawn, and cancelled the OS Triage program.

The officers seized Thomas's computers.  Monaghan testified that he believed there was child pornography on the HP desktop because of Olausen's statements and the internet history results.  Based on his experience, Monaghan believed it was likely there would be child pornography on the other computers as well.  Monaghan further stated that, based on his experience, if they had left the computers at Thomas's residence, any evidence on the computers would have been destroyed.

Monaghan initially discussed obtaining a state search warrant for the HP desktop with a state prosecutor on July 23, 2012, the Monday following the search, which took place on Saturday, July 21.  The state attorney requested that Monaghan "clarify information about [Thomas] and [Olausen's] relationship."  On July 26, 2012, Monaghan again met with a state attorney, who stated that she would review the warrant application and follow up with Monaghan the next day.  Between July 27 and August 22, 2012, Monaghan "had multiple [telephone] conversations" with the state attorney "in reference to obtaining a search warrant for the computer media in this case."  On August 22, 2012, the state attorney advised Monaghan there was insufficient probable cause to obtain a state search warrant.

That same day, August 22, Monaghan contacted a federal Assistant United States Attorney ("AUSA") about obtaining a federal search warrant. The AUSA advised Monaghan to conduct an additional investigation by reviewing the OS Triage results. Monaghan did so, and those results indicated access and viewing of child pornography. The internet history contained website names indicative of child pornography, and when Monaghan viewed some of those sites, he found at least one image of child pornography. Monaghan conceded that he could not be sure the content of the websites was the same on the day he reviewed them as it would have been on July 20, 2012, when Thomas viewed them. Nonetheless, Monaghan incorporated those results in his federal warrant application, which was submitted to and approved by a magistrate judge on August 24, 2012. After obtaining the federal warrant, the HP desktop was forensically analyzed, and the search revealed hundreds of images of child pornography.

## C.    Magistrate Judge's Report and Recommendation

Following the suppression hearings, the magistrate judge issued a report recommending that Thomas's motion to suppress be denied. The magistrate judge found no Fourth Amendment violation as to the initial search of the computers based on Olausen's consent, given her actual or apparent authority over the computers. The magistrate judge further determined that the search and seizure of data from the HP desktop before Thomas revoked consent was proper, and Thomas's revocation of consent did not require suppression of the evidence already lawfully obtained. The

magistrate judge noted that the "seizure of the HP computer and its removal from the home [was] slightly more problematic," but ultimately concluded the seizure was "of little consequence," as the computer was not actually searched until Monaghan obtained a warrant. The magistrate judge determined that Monaghan had probable cause to believe evidence of child pornography would likely be found on the HP desktop when he seized the computer and that the evidence would be lost or destroyed if they left the computer at the scene while seeking a search warrant. Finally, the magistrate judge concluded that the warrant was supported by probable cause.

Over Thomas's objections, the district court adopted the magistrate judge's recommendation and denied Thomas's motion to suppress.

## D.    Trial, Sentencing, and Direct Appeal

After the district court denied Thomas's motion to suppress, he proceeded to trial. The jury found Thomas guilty as charged. The district court sentenced Thomas to 96 months' imprisonment, followed by a lifetime of supervised release.

Thomas appealed, challenging the district court's denial of his motion to suppress, and this Court affirmed. United States v. Thomas, 818 F.3d 1230 (11th Cir. 2016). On direct appeal, Thomas argued that Olausen lacked authority to consent to a forensic search of the HP desktop and, as such, the officers did not have a lawful ground for conducting the warrantless OS Triage scan of the computer. Id. at 1239. Thomas further asserted that the results of the OS Triage scan and all the evidence discovered after Monaghan obtained the search warrant (based on an affidavit that

11

included the OS Triage results) should be suppressed as fruit of the poisonous tree.

Id.

This Court concluded that Olausen did have common authority over the HP desktop, such that she could consent to the OS Triage scan, and that the fruits of the search warrant were admissible. Id. at 1241-42. This Court also held that the evidence seized from the HP desktop pursuant to the search warrant was admissible under the independent source doctrine because, even absent the OS Triage results, there was sufficient evidence to support a finding of probable cause that child pornography would be found on the HP desktop. Id. at 1243-44. Accordingly, this Court affirmed Thomas's conviction. Id. at 1244.[3]

## II. 28 U.S.C. § 2255 PROCEEDINGS

In September 2017, Thomas filed the instant counseled § 2255 motion. Thomas asserted that his trial counsel was ineffective for failing to argue that the evidence recovered from the HP desktop should have been suppressed due to law enforcement's unreasonable delay in obtaining a search warrant. In a supporting memorandum, Thomas submitted that binding precedent at the time of his trial established that a 33-day delay in securing a search warrant was unreasonable. Thus, Thomas's trial counsel was ineffective in failing to raise the delay as a basis for Thomas's suppression motion. Thomas further contended that counsel's deficient

---

[3]The Supreme Court denied Thomas's petition for a writ of certiorari. Thomas v. United States, 137 S. Ct. 171 (2016).

performance prejudiced him because, had his suppression motion been granted, the government would have had no evidentiary basis for his conviction. Thomas also requested an evidentiary hearing.

In response, the government argued that Thomas failed to show deficient performance because the 33-day delay in obtaining the warrant was not unreasonable. The government asserted that Monaghan diligently pursued a state search warrant and, when he learned the state would not proceed, immediately sought a federal warrant. The government stressed that Thomas never requested the return of his computer or any files contained therein during the 33-day period before Monaghan obtained the federal warrant. The government further submitted that it was not necessary for Monaghan to pursue federal and state warrants simultaneously. The government maintained that trial counsel's decision to pursue four other suppression arguments was a strategic choice. The government opposed Thomas's request for an evidentiary hearing.

Thomas filed a reply, reiterating the need for an evidentiary hearing. Thomas rejected the government's argument that his trial counsel made a strategic choice in not raising the delay issue, noting there was no evidence in the record regarding trial counsel's decision-making process. Thomas also contested the government's assertion that the 33-day delay was reasonable. Thomas contended that the record contained no details about the warrant application process during the 25-day period

13

from July 27 through August 22, and that gap showed a lack of diligence on the part of the government.

In a surreply, the government attached an affidavit from Thomas's former trial counsel, Matthew Farmer. In the affidavit, Farmer recounted the four suppression theories he had raised on Thomas's behalf, including that the warrant application was stale due to the delay in obtaining the federal warrant. Farmer stated that he did "not recall whether or not [he] considered asserting a distinct fifth theory of suppression based on the passage of 33 days between the seizure of Mr. Thomas' computer and the issuance of the federal search warrant," but that he did "recall that [he] did not file such a motion."[4] Farmer also stated, however, that "[a]ccording to discovery provided by the government and information [he] obtained through Florida's Public Records Act, [he] learned that the case agent repeatedly attempted during the period of July 21, 2012 to August 22, 2012 to encourage the Pinellas-Pasco State Attorney's Office to seek a state judicial warrant for a search of Mr. Thomas's computer, which remained in the custody of law enforcement." Farmer further noted that he was not

---

[4]At one of the suppression hearings, the magistrate judge flagged the delay as a possible issue, stating:

> I haven't said, but there is a recent case in the Eleventh Circuit—I haven't argued this case, and I'm not going to consider it as part of the argument, but there is a recent case in which the Eleventh Circuit said that there was undue delay in obtaining a warrant where they had seized a computer and then the agent had gone off to some kind of training program or something, and the argument was made that the search warrant should be invalidated because it was—there was undue delay, and the court actually agreed with that because of the nature of information kept on the computers and the usability of it and so forth. But it's for another day. I just throw that out. You may want to take a look at that case if you get a chance.

However, neither the parties nor the magistrate judge or district court expressly addressed that issue.

14

aware of "any efforts during this period by Mr. Thomas to request the return of his property," but that his representation of Thomas began many months later.

Ultimately, the district court denied Thomas's § 2255 motion and his requests for an evidentiary hearing and a COA. The district court determined that the delay in obtaining a warrant in Thomas's case was not unreasonable. The district court found that Monaghan diligently pursued a state search warrant initially because he believed the investigation would proceed in state court, and immediately began pursuing a federal warrant when he learned the state would not prosecute. The district court stated that "Monaghan was pursuing a search warrant during the entire [33]-day period before the warrant was issued," and under the circumstances, the timing was reasonable. The district court further concluded that, because Thomas did not show the delay was unreasonable, he could not show he was prejudiced by trial counsel's failure to raise that issue.

Thomas then moved for a COA in this Court, and a judge of this Court granted him a COA on the following issue: "Whether law enforcement's delay in obtaining a federal warrant to seize Mr. Thomas's computer violated his Fourth Amendment possessory interest in the device?"

### III. COA GRANT

As a preliminary matter, we note that the COA granted in this case does not specify the correct legal issue. That is because it addresses only the merits of the underlying Fourth Amendment claim Thomas asserts his trial counsel should have

15

raised, rather than the overarching ineffective-assistance claim that was the basis of Thomas's § 2255 motion. While it is necessary to consider the merits of the underlying Fourth Amendment issue to determine whether Thomas's counsel performed deficiently, a COA is required, but missing, on the ineffective assistance claim that Thomas actually raised, and the district court actually ruled on. Nonetheless, after review, we conclude that the issue here is not frivolous, and we thus sua sponte expand the COA to include whether the district court erred in denying Thomas's ineffective assistance claim (which itself encompasses a consideration of the Fourth Amendment question already granted). See Mays v. United States, 817 F.3d 728, 733 (11th Cir. 2016) (recognizing this Court's power to expand a COA sua sponte); Dell v. United States, 710 F.3d 1267, 1272-73 (11th Cir. 2013) (same).

With that, we now turn to the merits of Thomas's § 2255 motion.

## IV. MERITS DISCUSSION

### A.    Ineffective Assistance Claim

Under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), a movant demonstrates ineffective assistance of trial counsel by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant. Nejad v. Att'y Gen., 830 F.3d 1280, 1290 (11th Cir. 2016). The movant must satisfy both prongs to

16

demonstrate ineffective assistance of counsel.  Bishop v. Warden, 726 F.3d 1243, 1254 (11th Cir. 2013).[5]

Trial counsel's performance is entitled to a presumption of reasonableness and, to overcome that presumption, a defendant must show that "no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000).  To show prejudice on an ineffective assistance claim based on trial counsel's failure to raise an issue in a motion to suppress, a movant must show that (1) his underlying Fourth Amendment claim is meritorious, and (2) there is a reasonable probability the verdict would have been different if the evidence were suppressed.  See Zakrzewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006).

## B.    Fourth Amendment Precedent

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV.  A seizure that is lawful at its inception may nonetheless violate the Fourth Amendment if the manner of its execution unreasonably infringes on a possessory interest protected by the Fourth Amendment.  See United States v. Jacobsen, 466 U.S. 109, 124, 104 S. Ct. 1652, 1662 (1984).  As relevant here, this

---

[5]In reviewing the denial of a § 2255 motion raising ineffective assistance of counsel claims, we review legal questions de novo and factual findings for clear error.  Rhode v. United States, 583 F.3d 1289, 1290 (11th Cir. 2009).  We review the denial of an evidentiary hearing in a § 2255 proceeding for an abuse of discretion.  Winthrop-Redin v. United States, 767 F.3d 1210, 1215 (11th Cir. 2014).  A district court abuses its discretion if it applies an incorrect legal standard, unreasonably or incorrectly applies the law, follows improper procedures in making its determination, or makes clearly erroneous factual findings.  Id.

Court has held that the seizure of a computer based on probable cause is unconstitutional if law enforcement acts with "unreasonable delay" in securing a search warrant. United States v. Mitchell, 565 F.3d 1347, 1350-51 (11th Cir. 2009).

When evaluating the reasonableness of the government's delay in obtaining a search warrant, we must carefully balance governmental and private interests. Id. at 1351; United States v. Laist, 702 F.3d 608, 613 (11th Cir. 2012). In doing so, "rather than employing a per se rule of unreasonableness," we "evaluate the totality of the circumstances presented by each case." Laist, 702 F.3d at 613 (internal quotation marks omitted); Mitchell, 565 F.3d at 1351 ("The reasonableness of the delay is determined in light of all the facts and circumstances, and on a case-by-case basis." (internal quotation marks omitted)).

## C.    Our Precedent in Mitchell and Laist

As background, and because the parties rely so heavily on them, we discuss our decisions in United States v. Mitchell and United States v. Laist regarding whether a governmental delay of some 20 to 25 days in submitting an application for a search warrant, while holding a computer based on probable cause, is an unreasonable seizure under the Fourth Amendment.[6]

---

[6]The parties also cite our decision in United States v. Sparks, 806 F.3d 1323 (11th Cir. 2015). In that case, the defendants left their cell phone at a Walmart store, and the employee who found it turned the phone over to law enforcement after discovering images of child pornography on the phone. Id. at 1329. On appeal, the defendants challenged, among other things, the 23-day delay between the phone being turned over and law enforcement obtaining a search warrant. Id. at 1338. This Court did not reach the issue of whether the delay was reasonable, however, because the Court concluded that the defendants abandoned their possessory interest in the phone, at most, three days after law enforcement seized the phone. Id. at 1339.

18

We begin with Mitchell, a 21-day delay case. In Mitchell, the defendant was identified as a possible target in a large-scale child pornography investigation. 565 F.3d at 1348-49. On February 22, 2007, two law enforcement agents went to Mitchell's residence and asked to speak to him about an ongoing investigation. Id. at 1349. Mitchell agreed to speak with the agents and let them in. Id. The agents told Mitchell they were investigating child pornography, and Mitchell admitted he had purchased subscriptions to two child pornography websites. Id. Mitchell also told the agents he had two computers in the house, one of which was a desktop that Mitchell primarily used. Id. The agents asked Mitchell whether either computer contained "illegal contraband" and whether they contained child pornography, and Mitchell responded "yes, probably" to both questions. Id. Mitchell would not consent to a search of the desktop computer, but admitted to the agents that the desktop was the computer that contained child pornography. Id. Accordingly, the agents seized the desktop computer's hard drive and took it with them. Id.

A few days later, on February 25, 2007, the primary case agent traveled out of state to attend a two-week training course. Id. It was not until March 15, 2007, three days after the agent's return from that training and 21 days after the initial seizure, that the primary case agent obtained a warrant to search the hard drive. Id. The warrant application that the agent submitted was comprised primarily of boilerplate language, with only six paragraphs of original content. See id. at 1349-50. After the

19

warrant was issued, the agent searched Mitchell's hard drive and discovered images of child pornography. Id. at 1350.

Mitchell was indicted, but moved to suppress the evidence recovered from the search of his hard drive. Id. The district court denied his motion, and Mitchell pled guilty while preserving his right to appeal the suppression issue. Id. On appeal, Mitchell argued that the 21-day delay in obtaining the search warrant was unreasonable. Id.

This Court explained that, "while the initial seizure of [Mitchell's] hard drive was permissible," a seizure based on probable cause can be unconstitutional "if the police act with unreasonable delay in securing a warrant." Id. (internal quotation marks omitted). This Court further explained that "[t]he reasonableness of the delay is determined in light of all the facts and circumstances, and on a case-by-case basis." Id. at 1351 (internal quotation marks omitted). "The reasonableness determination will reflect a careful balancing of governmental and private interests." Id. (internal quotation marks and alteration omitted).

As to Mitchell's possessory interest, this Court noted that "[c]omputers are relied upon heavily for personal and business use," and a three-week detention of Mitchell's hard drive before obtaining a warrant "constitute[d] a significant interference with Mitchell's possessory interest." Id. That interference was not eliminated by Mitchell's admissions to law enforcement that the computer contained child pornography, which provided the probable cause for the seizure. Id.

20

As to the government's interest, the <u>Mitchell</u> Court found the government's "excuse offered for the three-week delay in applying for a warrant [was] insufficient." <u>Id.</u> at 1352. The Court emphasized that the agent had two-and-a-half days to seek a warrant before he left on his training, the warrant affidavit itself was largely composed of boilerplate language and could have been put together quickly, and the other investigating agent could have secured a warrant in the primary case agent's absence. <u>Id.</u> at 1351. The Court further emphasized that the "only reason" the agent gave for the 21-day delay was that he "didn't see any urgency of the fact that there needed to be a search warrant during the two weeks that he was gone, and that he felt there was no need to get a search warrant for the content of the hard drive until he returned back from training." <u>Id.</u> (internal quotations and alterations omitted).

This Court also rejected the government's argument that the delay "had no practical effect upon Mitchell's rights" because the forensic examination of his computer could not have been done until the case agent returned from his training in any event. <u>Id.</u> at 1352. The Court explained that this argument was "predicated on the premise that [the agent's] attendance at the training session would have provided an excuse for the delay in applying for the warrant and, if a warrant had been obtained, it would have justified a delay in commencing the search of the hard drive." <u>Id.</u> In rejecting that premise, the Court stressed that the purpose of securing a warrant quickly is to ensure that a suspect's property is promptly returned if the search reveals no incriminating evidence, and "this consideration applies with even greater force to

21

the hard drive of a computer, which is the digital equivalent of its owner's home." Id. (internal quotation marks omitted).

Under the circumstances, this Court concluded that the government's "excuse offered for the three-week delay in applying for a warrant [was] insufficient." Id. The Court reiterated, however, that the reasonableness inquiry is dependent on all of the circumstances and observed that there may be some circumstances when "a delay that might otherwise be unduly long would be regarded as reasonable." Id. at 1352-53. This Court stated, "we emphasize again that we are applying a rule of reasonableness that is dependent on all of the circumstances." Id. at 1352. The problem in Mitchell's case was that law enforcement made "[n]o effort . . . to obtain a warrant within a reasonable time" because they "simply believed that there was no rush." Id. at 1353. This Court therefore concluded that, under those circumstances, the 21-day delay in obtaining the warrant was unconstitutional, and Mitchell's motion to suppress should have been granted. Id.

By contrast, in Laist, this Court held that a 25-day delay in obtaining a warrant to search the defendant's computer was reasonable. 702 F.3d at 610. In Laist, the FBI identified the defendant, a University of Georgia student, as a suspect in a child pornography investigation. Id. On March 4, 2009, agents visited Laist's apartment and asked to speak with him. Id. Laist agreed and allowed the agents into his apartment. Id. When the agents informed Laist that there was reason to believe his computer contained child pornography, Laist admitted that it did. Id. He also

22

admitted that he had child pornography on five external hard drives.  Id.  Laist signed

two consent forms authorizing the seizure of his computer and hard drives, provided

the agents with his username and password, and accessed the computer to show the

agents an image of child pornography.  Id. at 610-11.  The agents determined that they

needed to seize the computer and hard drives, but first allowed Laist to copy whatever

files he wanted onto a different external hard drive.  Id. at 611.

Subsequently, on March 11, 2009, Laist's attorney drafted a letter revoking

consent to the search and seizure, which the FBI received on March 12, 2009.  Id.

That same day, the case agent contacted the AUSA to determine what needed to be

done and began preparing a warrant affidavit and application.  Id.  At the time, the

case agent was stationed in a two-person office covering a ten-county area.  Id.  The

warrant affidavit, which was highly detailed and specific to the facts of the case, was

submitted to a magistrate judge on April 7, 2009.  Id.  Because of the magistrate

judge's busy schedule, however, the warrant was not issued until April 13, 2009.  Id.

at 612.

Upon searching the computer and hard drives, the FBI discovered thousands of

images and videos of child pornography.  Id.  In 2011, Laist was indicted and charged

with possession and receipt of child pornography.  Id.  Laist moved to suppress the

evidence obtained from his computer and hard drives, arguing that the delay in

obtaining the search warrant was unreasonable.  Id.  The district court denied the

motion to suppress, and Laist pled guilty.  Id. at 610, 612.

23

On appeal in Laist, this Court emphasized that the reasonableness inquiry does not employ per se rules, but instead involves balancing of private and governmental interests based on the totality of the circumstances. Id. at 613. The Laist Court then identified several "highly relevant" factors to consider in this context: (1) the significance of the interference with the person's possessory interest; (2) the duration of the delay; (3) whether the person consented to the seizure; and (4) the government's legitimate interest in holding the property as evidence. Id. at 613-14.

The Laist Court also observed that, in determining the reasonableness of the government's actions, courts must take into account whether law enforcement were diligent in pursuing their investigation. Id. at 614. In doing so, courts may consider: (1) the nature and complexity of the investigation, and whether overriding circumstances arose, necessitating a diversion of law enforcement resources; (2) the quality of the warrant application and the amount of time one would expect it would take to prepare; and (3) any other evidence pertaining to law enforcement's diligence. Id. This Court emphasized that the balancing calculus in this area is "fact-intensive" and not easily reduced to brightline rules, as a delay as short as 90 minutes might be unreasonable in some contexts, while in others a delay of more than three months might be reasonable. Id.

Addressing the facts of Laist's case, this Court first determined that it would be improper to attribute the six-day delay caused by the magistrate judge to the government under the circumstances. Id. at 614-16. The Court explained that doing

24

so "would fail to serve the purposes for which [the exclusionary rule] remedy was created." Id. at 614-15. In particular, the Court stressed that the sole purpose of the exclusionary rule is to deter future Fourth Amendment violations, not to redress an injury already suffered. Id. at 615. As such, where suppression would not yield appreciable deterrence, exclusion is unwarranted. Id. The Court reasoned that attributing the magistrate judge's delay to the government in Laist's case would not have any appreciable deterrent effect, as there was no reason why "the government, having completed the warrant application, would want to delay further the time when its search became lawful." Id.

Moreover, the Laist Court noted that the Supreme Court had long held that "when it comes to applying the exclusionary rule, the identity of the responsible party does matter," and that the failings of judges and magistrate judges do not trigger the same remedy as those of law enforcement. Id. at 615-16. The Court also rejected Laist's argument that the government should have sought out a new magistrate judge, stating that such a requirement would encourage forum shopping. Id. at 616. Thus, the Court considered only the 25-day period from March 12 (the day consent was withdrawn) to April 7 (the day the warrant application was submitted) in determining whether the delay was reasonable. Id.

The Laist Court then turned to the "essential question" of "whether the 25-day delay in this case was unreasonable" and held that it was not. Id. The Court noted that Laist undoubtedly retained a significant possessory interest in his computer and

25

hard drives, and that the interference with that interest was not insubstantial.  Id.

Nonetheless, the Court also concluded that Laist's possessory interest was diminished

for several reasons: (1) Laist was given the opportunity to remove whatever files he

wanted from the computer and hard drives before turning them over; (2) Laist did not

request that he be allowed to access any additional files after revoking his consent;

and (3) Laist admitted to the presence of child pornography on his computer and

actually showed the agents an image of child pornography on the computer during the

interview.  Id.  The Court pointed out that this last fact both diminished Laist's

interest in the computer and enhanced the government's legitimate interest in

maintaining custody of the computer as evidence of a crime.  Id.

The Laist Court further concluded that the government acted diligently, and

thus reasonably, in pursuing the search warrant.  Id. at 616-17.  In particular, the Court

noted that: (1) the case agent immediately began preparing a warrant affidavit on the

day he learned Laist had revoked consent; (2) in the weeks prior to submitting the

warrant application, the case agent exchanged rounds of edits with the AUSA; and

(3) the warrant affidavit was not "replete with boilerplate language," but instead

contained a highly detailed account of the investigation and Laist's conduct.  Id. at

617.  The Laist Court further noted that "[a]n investigation of this scope and

complexity requires more time to prepare a warrant" than a simpler case would.  Id.

Furthermore, the case agent was extremely busy, given that he worked in a very small,

two-person office that covered a comparatively large geographical area.  Id.  In sum,

26

the Court concluded that, although a 25-day delay is "far from ideal," under the totality of the circumstances in Laist's case, the government's actions were sufficiently diligent and reasonable.  Id.

As a final point, the Laist Court rejected Laist's argument that Mitchell compelled a different result.  Id. at 617-19.  The Court explained that the facts of Laist's case were readily distinguishable from Mitchell, emphasizing that: (1) the defendant in Mitchell did not consent to the seizure; (2) unlike the agents in Mitchell, the agents in Laist had actually seen child pornography on the computer; (3) Laist was permitted to remove personal files from the computer before it was seized; (4) the case agent in Laist acted far more diligently to prepare the warrant application than the agent in Mitchell, whose only excuse for the delay was that he did not see any urgent need to obtain a warrant; (5) unlike the application in Mitchell, the application in Laist was not largely boilerplate; and (6) there was no evidence the agent in Mitchell was busy at the time.  Id. at 618.  The Court similarly dismissed Laist's argument that Mitchell established a brightline rule that any delay over 21 days is unreasonable.  Id.  The Court reiterated that the reasonableness determination is highly fact-specific and "always based on the totality of the circumstances."  Id.

## D.    Analysis

Neither Mitchell nor Laist directly resolves Thomas's case.  As both of those cases acknowledge, the reasonableness inquiry in this context is highly fact-specific and based on the totality of the circumstances in each individual case.  See id. at 614

27

(stating that the balancing calculus is "fact-intensive"); Mitchell, 565 F.3d at 1352 (emphasizing that "reasonableness . . . is dependent on all of the circumstances"). And the facts and circumstances of Thomas's case are different from those in both Mitchell and Laist. Thus, while Mitchell and Laist provide some guidance on how to evaluate Thomas's case, we must examine his case on its own particular facts to determine whether, under the totality of the circumstances here, the government's 33-day delay in obtaining a search warrant for the HP desktop was reasonable.

On Thomas's side of the balance, we note that Thomas retained a significant possessory interest in his computer. See Laist, 702 F.3d at 616; Mitchell, 565 F.3d at 1351. Thomas used the HP desktop both as a personal computer and for his home business, he did not consent to the seizure of the computer, and he denied that the computer contained any child pornography. And the government's interference with Thomas's possessory interest by holding his computer for 33 days without his consent was not insubstantial. See Laist, 702 F.3d at 616.

Nevertheless, Thomas's possessory interest in the HP desktop was somewhat diminished for at least two reasons. First, though the officers themselves did not see any child pornography on the HP desktop, they had very strong reasons to believe that a search of the computer would reveal child pornography based on: (1) Olausen's statements describing the images of child pornography she saw on the computer before police arrived; (2) their own observation of child erotica on the computer, which Dix testified is commonly found alongside child pornography; and (3) the links

28

on the "NNLollys" website, which were indicative of child pornography.  These facts both diminish Thomas's possessory interest in the HP desktop and enhance the government's interest in maintaining custody of it as substantial evidence of a serious federal crime.  See Laist, 702 F.3d at 616.

Second Thomas did not request the return of the HP desktop during the 33 days it took the government to secure a search warrant.  See United States v. Burgard, 675 F.3d 1029, 1033 (7th Cir. 2012) ("[I]t can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it—perhaps by checking on the status of the seizure or looking for assurances that the item would be returned.  If so, this would be some evidence (helpful, though not essential) that the seizure in fact affected [his] possessory interests."); see also United States v. Stabile, 633 F.3d 219, 235 (3d Cir. 2011) (concluding three-month delay in obtaining a warrant, caused by the lead agent's assignment on a protective Secret Service detail, was reasonable where the defendant did not request return of his hard drive until 18 months after the initial seizure).  Additionally, though Thomas was not given the opportunity to remove any files from the HP desktop before it was seized, he also never requested access to the computer after the seizure to retrieve any files he might need.  See Laist, 702 F.3d at 616.

Of course, even when a defendant's possessory interest in a computer is diminished, the government still must act diligently to obtain a search warrant.  Id. Several facts bear on the government's diligence here.  To start, Agent Monaghan

began his efforts to obtain a state search warrant just two days after seizing Thomas's computers. The seizure occurred on Saturday, July 21, 2012, and Agent Monaghan prepared a draft of the warrant affidavit and presented it to the state attorney the following Monday, July 23, 2012. Over the course of the next few days, between July 23 and July 26, Agent Monaghan took additional investigative steps at the request of the state attorney and submitted the warrant application to the state attorney for review. Thus, within five days of seizing the HP desktop, Agent Monaghan had already completed and tendered a case-specific affidavit and warrant application to the state attorney for the purpose of obtaining a state search warrant. These early efforts demonstrate that Agent Monaghan acted with dispatch in seeking a warrant and are a far cry from the complete lack of effort exercised by the agent in Mitchell, who did nothing to secure a warrant for three weeks simply because he believed there was no rush. See Mitchell, 565 F.3d at 1351, 1353.

Notably too, Monaghan was a state law enforcement officer, albeit one who also worked with the FBI's Innocent Images Task Force. The other four officers who were present during the search at Thomas's house on July 21, 2012, were officers of the City of Largo, Florida Police Department. Monaghan indicated at the suppression hearing that he believed the case against Thomas would proceed in the state system, that he had experience prosecuting child pornography offenses under state law, and that he believed there was probable cause for a search warrant in Thomas's case under Florida law. Given all of these circumstances, it was reasonable for Monaghan to

30

initially seek a search warrant in state court by coordinating with the state attorney's office.

Moreover, even during the 25-day period from July 27 to August 22, when the state attorney was considering whether there was probable cause for a warrant under state law, Agent Monaghan did not just sit on his hands. Rather, as his police reports reflect, Agent Monaghan "had multiple [telephone] conversations" with the state attorney during that period "in reference to obtaining a search warrant for the computer media in [Thomas's] case." Indeed, the affidavit from Farmer, Thomas's trial counsel, confirms that Agent Monaghan "repeatedly attempted . . . to encourage the Pinellas-Pasco State Attorney's Office to seek a state judicial warrant" during that time. And within two days of learning that the state attorney would not pursue a state search warrant, Agent Monaghan prepared and submitted a federal warrant application. As soon as Agent Monaghan learned on August 22, 2012, that the state prosecutor would not seek a state search warrant, he reached out to an AUSA about obtaining a federal search warrant. The AUSA advised Agent Monaghan to review the OS Triage results, and once Monaghan had incorporated those results into the federal warrant application, he submitted it on August 24, 2012.[7]

---

[7]We note that Thomas's case presents a materially different situation than the Fourth Circuit's recent decision in United States v. Pratt, 915 F.3d 266 (4th Cir. 2019). In Pratt, there was a 31-day delay in obtaining a warrant for the defendant's cell phone because the defendant had committed crimes in both North and South Carolina, and the government had to decide the location where to seek a warrant. Id. at 272. The Fourth Circuit held that the agents did not act diligently in that case because it "shouldn't have taken a month" for the agents to decide where to seek a warrant, particularly given the government's concession that it was "unlikely that the forum for a warrant

31

Taking all of these efforts by Agent Monaghan together, it is clear that the delay in this case "was not the result of complete abdication of his work or failure to 'see any urgency.'" See Burgard, 675 F.3d at 1034 (quoting Mitchell, 565 F.3d at 1351). To be sure, with the benefit of hindsight, we can imagine other paths Agent Monaghan might have pursued to secure a warrant more quickly—perhaps by seeking a federal warrant in the first instance. Id. "[B]ut that does not necessarily mean that [Agent Monaghan's] conduct was unreasonable." Id. Indeed, we have found no case, and Thomas points to none, holding that law enforcement must always seek a federal warrant first, must seek federal and state warrants simultaneously, or must switch gears and seek a federal warrant if the state warrant application process is taking too long.

Ultimately, our task here is to determine, considering all the circumstances and balancing Thomas's possessory interest in the HP desktop against the government's interest in maintaining custody of it as evidence of a crime, whether Agent Monaghan's efforts in this case were sufficiently diligent and, therefore, reasonable. See Laist, 702 F.3d at 613, 616; Mitchell, 565 F.3d at 1350-51. Under the totality of the circumstances here, we conclude that they were. As we explained above,

would affect a later prosecution." Id. Further, in Pratt, the government was not waiting for a state prosecutor to act.

Here, by contrast, Agent Monaghan determined at the outset to seek a state warrant, believing that the case would proceed in state court, and quickly took steps toward obtaining such a warrant. Monaghan also repeatedly communicated with the state prosecutor, and then obtained a federal warrant just two days after the state prosecutor declined to pursue a state warrant.

Thomas's possessory interest in the HP desktop was diminished by his failure to request access to or the return of the computer after it was seized and the government's several strong reasons to believe that child pornography would be found on the computer.  Meanwhile, the government had a compelling interest in retaining the laptop as evidence of a serious federal crime in this case—the agents may not have seen child pornography on the computer themselves, but the child erotica images, links to other websites indicative of child pornography, and Olausen's descriptions of the images she saw gave every indication that a search of the computer would reveal child pornography.  Importantly, Agent Monaghan acted diligently in pursuing a search warrant.  Agent Monaghan began the process just two days after seizing the HP desktop, submitted a warrant application to the state attorney less than a week after the initial seizure, remained in contact with the state attorney while she was reviewing the warrant application, and promptly pursued a federal search warrant when the state declined to pursue the case.  In light of all of these facts and circumstances, the 33-day delay in obtaining a warrant in this case, though by no means ideal, was not unreasonable.  See Laist, 702 F.3d at 617.

Accordingly, because the delay here was not unreasonable under the totality of the circumstances, Thomas's trial counsel was not deficient for failing to raise the delay issue as one of the grounds in Thomas's motion to suppress.  See Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance.").  Furthermore, because we

33

conclude that the delay issue ultimately lacks merit, Thomas also cannot show prejudice.  See Zakrzewski, 455 F.3d at 1260.

## IV. CONCLUSION

For the reasons outlined above, we conclude that the district court did not err in concluding that Thomas's § 2255 motion lacked merit.  Accordingly, we affirm the district court's denial of Thomas's § 2255 motion.

**AFFIRMED.**