[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15531

_____

D.C. Docket No. 3:11-cr-00006-CA-CHW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAVID BISHOP LAIST,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(December 11, 2012)

Before MARCUS and PRYOR, Circuit Judges, and FRIEDMAN,* District Judge.

MARCUS, Circuit Judge:

_____

* Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting by designation.

At the heart of this appeal is whether a government delay of some 25 days in submitting an application for a search warrant while holding a computer based on probable cause is an unreasonable seizure under the Fourth Amendment. In the proceedings below, the defendant David Laist pleaded guilty conditionally to possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), but reserved the right to appeal the district court's denial of his motion to suppress all evidence retrieved from his personal computer and five external hard drives. After thorough review, we affirm the district court's denial of the motion based on the totality of the circumstances presented by this case, which indicates that the government acted reasonably in obtaining the search warrant at issue.

I.

A.

The essential facts are these. In July 2008, the FBI Innocent Images National Initiative began investigating the online username "Tar Heel" for possession and distribution of child pornography images. The FBI traced that username to a student at the University of Georgia, David Laist. On March 4, 2009, FBI Special Agent James Cearley and two other agents, including a Computer Analysis and Response Team ("CART") Examiner, visited Laist's

2

apartment in Athens, Georgia. The agents' purpose was to conduct a "knock and talk" -- to interview the person at the address associated with the "Tar Heel" username and to request his or her consent to seize and search his or her computer.

The agents found Laist outside the apartment complex. Laist agreed to speak with the agents in his apartment. When informed that the FBI had reason to suspect Laist's computer contained child pornography, Laist confirmed that there was child pornography on the computer and on five external hard drives. The agents then asked Laist to sign two consent forms authorizing the search and seizure of his computer and hard drives. The forms were substantially similar, and the second, labeled FD-941, read, "I, David Laist, have been asked by Special Agents of the [FBI] to permit a complete search . . . of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals . . . for any evidence of a crime or other violation of the law." The form further stated, "I have been advised of my right to refuse to consent to this search, and I give permission for this search . . . . I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals." Laist signed the consent form, provided the agents with his

3

username and password, and also accessed the computer to show the agents an image that appeared to be child pornography.

Based on the image, Special Agent Cearley concluded that he needed to seize the computer and hard drives as evidence. At that time, Laist asked if he could copy some school documents that he needed for his studies at the University of Georgia, and the agents allowed him to copy his files onto a different external hard drive. The agents then took custody of the computer and departed.

During two hearings on Laist's motion to suppress, the court found, or the parties stipulated to the following facts regarding the warrant application process. On March 4, 2009, when the agents took the computer and hard drives, the FBI had already "confirmed at the scene at the time that there was actual . . . child pornography on the computer by admission of the defendant and also by review by [CART Examiner] Figueroa." Prior to taking the computer, however, the FBI allowed Laist to "download whatever he wanted to download," and Laist "did take off what he thought he needed at that time." On March 5, 2009, Laist called Cearley and provided him with additional passwords to the five hard drives.

On March 11, 2009, Laist's attorney drafted a letter revoking his consent, which the FBI received on March 12, 2009. Cearley "put the ball in motion the very first day that he received the notice" by calling Assistant U.S. Attorney

4

("AUSA") Paul McCommon, asking what needed to be done, and beginning to prepare the warrant affidavit and application. At the time, Cearley was in a two-person office that covered ten counties, one of which -- Clarke County -- the district court found "could keep you pretty busy all by itself."

The trial court also found that "there [was] considerable effort that was put into the preparation of [Cearley's] affidavit." As the judge put it, the affidavit contained "a lot of valuable information" that was "very informative . . . about how these crimes are committed," such as an explanation of the peer-to-peer file sharing system used to distribute the child pornography. The warrant affidavit also contained extensive information Cearley obtained from other agents regarding the investigation that initially identified Laist, including descriptions of how the Innocent Images National Initiative "conducted several online undercover sessions during July 9 and July 11 of 2008." In addition to this background information, there was a "very substantial amount of information specifically as to the Defendant's conduct," which began on page 14 and continued to page 17 of the affidavit. The district court specifically determined that it "didn't find that [the warrant affidavit] had a lot of boilerplate in it."

The warrant affidavit and application were completed and submitted to Magistrate Judge Claude Hicks on April 7, 2009. At the time, the magistrate judge

5

notified the government he would not be able to review the warrant application until the following week. After "a delay of roughly a week" due to a habeas hearing that kept him occupied, Hicks issued the search warrant on April 13, 2009. Ultimately the FBI discovered that the computer and external hard drives contained thousands of images and videos depicting child pornography.

B.

Laist was indicted on January 19, 2011, in the United States District Court for the Middle District of Georgia and charged with Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). A superseding indictment filed on May 12, 2011, replaced the Distribution charge with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2).

On February 8, 2011, Laist moved to suppress all evidence obtained from his computer and the five external hard drives. Relying primarily on United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009), Laist argued that he had a substantial possessory interest in the items; that after he revoked his consent to their search, the FBI continued to hold them only on the basis of probable cause; and that the subsequent delay in obtaining a search warrant was unreasonable and therefore violated his Fourth Amendment rights.

6

The district court held a hearing on the motion on June 29, 2011, but held off on making a decision until the government could explain why the magistrate judge took an additional six days to issue the warrant. On July 28, 2011, the court admitted a statement from McCommon explaining that the magistrate judge took six days to issue the warrant because he was occupied by a habeas hearing. At the same hearing, the district court denied the motion to suppress. The court treated the relevant time frame as between March 12, 2009, and April 7, 2009, based on its decision not to "hold the Government accountable for the failure of the magistrate to take six days to sign this affidavit." The court then considered its factual findings under a "totality of the circumstances" approach, held that "the delay in this case of 23 to 25 days is reasonable under the circumstances," and consequently denied the motion to suppress.

On November 16, 2011, the court sentenced Laist to 120 months for each crime, to be served concurrently, 25 years of supervised release, and a fine of $17,500. Judgment was entered on November 22, 2011, and Laist filed a timely notice of appeal on the same day. Laist is currently incarcerated.

## II.

We review "a district court's denial of a motion to suppress evidence as a mixed question of law and fact, with rulings of law reviewed de novo and findings

7

of fact reviewed for clear error, in the light most favorable to the prevailing party in district court." United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007) (citing United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003)). Because the government prevailed in the district court, this "Court must construe the facts in the light most favorable to . . . the Government." United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002) (citing United States v. Wilson, 894 F.2d 1245, 1254 (11th Cir. 1990)).

The primary issue in this case is whether the FBI acted unreasonably and hence violated the Fourth Amendment when it took 25 days to prepare its application for a search warrant while holding Laist's computer based on probable cause.[1] A preliminary issue is whether an additional six-day delay, which occurred because the magistrate judge had taken some time to approve the warrant application, is properly attributable to the government for purposes of evaluating its actions' reasonableness under the Fourth Amendment.

---

[1] As of March 4, 2009, the FBI seized the laptop computer and the five external hard drives based on Laist's consent, although Special Agent Cearley also plainly had probable cause to seize those items because (1) Laist had admitted to the presence of child pornography on the computer and hard drives; and (2) Laist actually showed the agents a child pornographic image on the computer. After Laist revoked consent on March 12, 2009, however, the FBI continued to hold the items solely based on probable cause. Thus, we treat the 25-day period after March 12, 2009, as a seizure based on probable cause.

The Fourth Amendment guards the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and imposes a warrant requirement on most searches and seizures. U.S. Const. amend. IV. However, case law has carved out exceptions to the warrant requirement over time, and "it is well-settled that it is constitutionally reasonable for law enforcement officials to seize 'effects' that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband." United States v. Jacobsen, 466 U.S. 109, 121-22, 104 S. Ct. 1652 (1984). But "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" Id. at 124.

A temporary warrantless seizure supported by probable cause is reasonable as long as "the police diligently obtained a warrant in a reasonable period of time." Illinois v. McArthur, 531 U.S. 326, 334, 121 S. Ct. 946 (2001). In evaluating these often difficult cases, "rather than employing a per se rule of unreasonableness," the Supreme Court has held that a court must "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." Id. at 331; accord United States v. Place, 462 U.S. 696, 703, 103 S. Ct. 2637 (1983)

9

(courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion").Thus, when determining whether a delay renders a seizure unreasonable under the Fourth Amendment, we evaluate the totality of the circumstances presented by each case. See United States v. Mitchell, 565 F.3d 1347, 1351 (11th Cir. 2009) ("The reasonableness of the delay is determined in light of all the facts and circumstances, and on a case-by-case basis. The reasonableness determination will reflect a careful balancing of governmental and private interests." (citations and internal quotation marks omitted)); id. at 1352 (characterizing this Court's test as "a rule of reasonableness that is dependent on all of the circumstances"); see also United States v. Burgard, 675 F.3d 1029, 1033 (7th Cir. 2012); United States v. Martin, 157 F.3d 46, 54 (2d Cir. 1998).

In the past, courts have identified several factors highly relevant to this inquiry: first, the significance of the interference with the person's possessory interest, see Mitchell, 565 F.3d at 1351; second, the duration of the delay, see Place, 462 U.S. at 709 (characterizing the "brevity" of the seizure as "an important factor"); third, whether or not the person consented to the seizure, see United States v. Stabile, 633 F.3d 219, 235 (3d Cir. 2011); and fourth, the government's legitimate interest in holding the property as evidence, see Burgard, 675 F.3d at

10

1033. Moreover, as we explained in Mitchell, computers are a unique possession, one in which individuals may have a particularly powerful possessory interest: "Computers are relied upon heavily for personal and business use. Individuals may store personal letters, e-mails, financial information, passwords, family photos, and countless other items of a personal nature in electronic form on their computer hard drives." 565 F.3d at 1352.

When balancing these interests to determine the reasonableness of the government's actions, we are also obliged to "take into account whether the police diligently pursue[d] their investigation." Place, 462 U.S. at 709. Thus, among other factors, we consider the nature and complexity of the investigation and whether "overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case," see Mitchell, 565 F.3d at 1353; the quality of the warrant application and the amount of time we expect such a warrant would take to prepare, see id. at 1351; and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant. These factors are by no means exhaustive, but they are the most relevant when we seek to "balance the privacy-related and law enforcement-related concerns," McArthur, 531 U.S. at 331, at stake in cases of this kind. Given the complex interactions of these factors, this balancing calculus is fact-intensive and it is therefore unwise to establish a

11

duration beyond which a seizure is definitively unreasonable or, as discussed below, even presumptively unreasonable. Thus, in some contexts, a delay as short as 90 minutes may be unreasonable, see Place, 462 U.S. at 710 (stop based on reasonable suspicion only); while in others, a delay of over three months may be reasonable. See Stabile, 633 F.3d at 235-36 (computer seized with defendant's consent, which he did not revoke until after the warrant was obtained).

At the outset, the parties dispute whether the delay attributable to the government should be the 31 days between March 12, 2009, and April 13, 2009, which, notably, includes the six-day period after the government submitted the warrant application to the magistrate judge but before he issued the search warrant. Without including that period, the delay in question is 25 days.[2] We do not believe it proper to attribute the six-day delay to the government, because,

---

[2] The district court referred to the delay as being between 23 and 25 days in its ruling. However, the district court found that the date the FBI received Laist's revocation of consent was March 12, 2009, and that the date the warrant affidavit was submitted was April 7, 2009 -- a period of 25 days. The court apparently discounted several additional days, though it is unclear exactly why it did so. One possibility is that the court subtracted that time because it was "reasonable under the circumstances that [it] would require some additional time in order to be able to get this computer down from Atlanta," and the court did not believe this additional delay ought to be attributed to the government. However, we see no reason why the retrieval of the physical evidence necessitated additional time and could not have coincided with the period Special Agent Cearley and the U.S. Attorney's Office worked on the warrant application. Indeed, the record reflects that AUSA McCommon told Cearley to request the computer and hard drives from Atlanta after Cearley had submitted his initial draft to McCommon on or about March 22, 2009. Thus, if we exclude the six-day period the magistrate judge took to issue the warrant, we will treat the entire 25-day period between March 12, 2009, and April 7, 2009, as the delay at issue.

12

under these circumstances, including this time period when determining whether to exclude the evidence would fail to serve the purposes for which that remedy was created.

When determining whether to exclude evidence, we must remember that "the exclusionary rule . . . is a prudential doctrine created by th[e Supreme] Court to compel respect for the constitutional guaranty" of the Fourth Amendment. Davis v. United States, 131 S. Ct. 2419, 2426 (2011) (citations and internal quotation marks omitted). Its "sole purpose . . . is to deter future Fourth Amendment violations," and it "is not a personal constitutional right" or "designed to redress the injury" already suffered. Id. (internal quotation marks omitted). In short, "[w]here suppression fails to yield appreciable deterrence, exclusion is clearly unwarranted." Id. at 2426-27 (internal quotation marks omitted). Attributing this additional delay to the government is plainly unwarranted in these circumstances, as we can apprehend no appreciable deterrent effect from doing so. Indeed, at the point when the government completed and submitted its warrant application to the magistrate judge on April 7, 2009, its incentives were aligned with Laist's interests in this respect: both parties wanted the matter resolved promptly. The government no doubt preferred to commence its search immediately but could do so only with the judicial imprimatur of a search warrant; and, the

13

sooner the search commenced, the sooner the government could possibly return the computer and hard drives to Laist. The defendant fails to provide, and we cannot discern any reason why the government, having completed the warrant application, would want to delay further the time when its search became lawful.

Nor are we persuaded by Laist's assertion that the possessory interests safeguarded by the Fourth Amendment are unaffected by the identity of the party responsible for the delay, for the essential question is not whether the interest is the same but whether the remedy applied by the courts to safeguard that interest ought to be the same. Supreme Court precedent has long taught that, when it comes to applying the exclusionary rule, the identity of the responsible party does matter. In United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405 (1984), where the Supreme Court carved out the good-faith exception to the exclusionary rule, the Court specifically rejected the notion that failures of any government actor led to exclusion:

> To the extent that proponents of exclusion rely on its behavioral effects on judges and magistrates . . . , their reliance is misplaced. First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.

468 U.S. at 916 (emphasis added).

14

Leon instructs us that the identity of the responsible party is indispensable to determining whether courts should apply exclusion as a remedy. For many obvious reasons, the Supreme Court specifically disavowed the idea that judges and magistrates are merely "adjuncts to the law enforcement team," see Leon, 468 U.S. at 917, and therefore their failings -- even if they touch on the same sensitive possessory interests, and regardless of whether the harm to the individual cannot be redressed in another manner -- do not trigger the same remedy.

The defendant at bottom advances a novel rule of law: that the United States is obligated to seek out a new magistrate judge in such circumstances, which would require the government to ascertain the schedule of the judge to whom it submits a warrant application and to seek a new one if the first would not be able to issue the warrant immediately. We reject this notion for two reasons. The proposed rule in effect demands forum shopping, which we will not encourage. In fact, the government already had its own powerful reasons to act with dispatch in this case, since it could not advance its investigation until a search warrant issued. Nor can we find any basis for imposing so novel a requirement in the Fourth Amendment, the controlling case law of this Circuit, or the law of any other court of the United States. Thus, for purposes of analyzing whether the FBI's delay in this case was reasonable, we consider only the 25-day period between March 12,

15

2009, the date consent was withdrawn, and April 7, 2009, when the warrant application was submitted to a judicial officer.

Since there is no "per se rule of unreasonableness," McArthur, 531 U.S. at 331, the devil, as always, is in the details. The essential question boils down to this: whether the 25-day delay in this case was unreasonable. We hold that it was not. Initially, there is no doubt that Laist retained a significant possessory interest in his computer and his hard drives. See Mitchell, 565 F.3d at 1351. The interference with Laist's possessory interest was not insubstantial, inasmuch as the FBI held his computer and hard drives for 25 days without his consent.

However, Laist's possessory interest in the contents of these possessions was diminished for several reasons. First, the district court found that Laist was afforded the opportunity to remove "whatever he wanted to download" from the computer and hard drives, and, notably, Laist did in fact remove files he needed for school. As the district court put it, "It is my understanding from the evidence that there was no limitation about this . . . . [I]t [i]s clear from the record that if he wanted to take other things off at the time he also could have done that." Since the possessory interest in a computer derives from its highly personal contents, the fact that Laist had a real opportunity to copy or remove personal documents reduces the significance of his interest. Indeed, although Laist revoked consent on

16

March 12, 2009, he did not request any additional files prior to the time the FBI obtained the search warrant on April 13, 2009, and there is no indication in this record that the FBI would have denied a request to retrieve additional non-contraband material on the computer. In the second place, Laist not only admitted to the presence of illicit images on the computer, which standing alone already diminishes his possessory interest, see Mitchell, 565 F.3d at 1351, he actually showed an image of child pornography to the FBI agents during the course of the interview. This fact both diminishes Laist's interest further while also enhancing the government's legitimate interest in maintaining custody of the computer and hard drives as substantial evidence of a serious federal crime.

Nevertheless, since Laist retained a possessory interest, albeit a diminished one in his computer, the Fourth Amendment still obligated the United States to "diligently obtain[] a warrant." McArthur, 531 U.S. at 334. On this record, we are convinced the government acted diligently, and thus reasonably, based on several critical facts. The district court found that Special Agent Cearley "put the ball in motion the very first day that he received the notice" Laist had revoked consent. There is ample support for this finding in the record. Cearley testified before the district court that he began preparing the warrant affidavit on March 12, 2009, and that he submitted his first draft of the affidavit to the U.S. Attorney's Office

17

roughly 10 days later. The record further reflects that Cearley and McCommon exchanged edits on the affidavit and warrant application in the weeks prior to submitting the application to the magistrate judge. The trial court further found that "there [was] considerable effort that was put into the preparation of [Cearley's] affidavit." Rather than being replete with boilerplate, the warrant affidavit contained "a lot of valuable information," including an explanation of the peer-to-peer file sharing system used to distribute the child pornography. It also contained information Cearley obtained from other agents regarding the investigation that initially identified Laist. In addition to this background information, there was, as the district court found, a "very substantial amount of information specifically as to the Defendant's conduct," which began on page 14 and continued to page 17 of the affidavit.

Other relevant factors support the reasonableness of the 25-day delay. An investigation of this scope and complexity requires more time to prepare a warrant. As the district court noted, this investigation took roughly a year and involved the efforts of numerous FBI agents beside Cearley, rendering it unlike a simpler case such as some narcotics possession cases. Moreover, the agents here were, as the district court found, extremely busy. Cearley worked in a two-person office that covered ten counties, one of which -- Clarke County -- the court opined "could

18

keep you pretty busy all by itself." Laist has failed to demonstrate that any of these findings should be set aside for clear error, nor could he. The district court's findings are amply supported by the record and reflect Cearley's testimony at the suppression hearing.

The government's efforts here were sufficiently diligent to pass muster under the Fourth Amendment. While a 25-day seizure based solely on probable cause is far from ideal, and we have found shorter delays unreasonable under different circumstances, see Mitchell, 565 F.3d at 1352 (21-day delay), the totality of the circumstances in this case demonstrate the reasonableness of the government's actions.

Laist argues, however, that Mitchell compels a different conclusion. We remain unconvinced. In Mitchell, Immigration and Customs Enforcement ("ICE") agents investigating a child pornography website conducted a knock and talk with the defendant, who admitted that there were "probably" images of child pornography on his computer. Id. at 1349. Based on probable cause, the agents then seized the defendant's computer and obtained a search warrant 21 days later.

In Mitchell, a panel of this Court, applying many of the same factors we examine today, concluded that the seizure and subsequent 21-day delay was unreasonable based on several key facts. First, the ICE agent attended a two-week

19

training course that began several days after the seizure, and he began preparing the warrant affidavit only after returning. Id. Moreover, the warrant consisted almost entirely of generic "boilerplate taken from another affidavit" the agent had completed for a different case. Id. at 1350. The Court was concerned with the lack of diligence demonstrated by the agent's actions. The agent's only excuse for the delay was that he "'didn't see any urgency of the fact that there needed to be a search warrant during the two weeks that [he] was gone,'" see id. at 1351, and that any sense of urgency had been eliminated by Mitchell's admission that the computer contained child pornography. The agent failed to ask any other agent to help in preparing the affidavit while he was absent. Id. at 1352. The government also offered no evidence bearing on the other factors, such as "overriding circumstances . . . necessitating the diversion of law enforcement personnel to another case," or whether "the resources of law enforcement [were] simply overwhelmed by the nature of [this] particular investigation." Id. at 1353.

The facts of this case are readily distinguishable. The initial seizure was based on consent, and the agents had actually seen an image of child pornography on Laist's computer, unlike the agents in Mitchell. Nonetheless, Cearley permitted Laist to remove whatever personal files he needed from the computer. Thus, compared to Mitchell, Laist had a diminished personal interest in his computer.

20

Meanwhile, Cearley acted far more diligently than the agent in <u>Mitchell</u> did in preparing the warrant application. Rather than waiting for more than two weeks to begin drafting a warrant affidavit, Cearley began that task on the very day he received Laist's revocation of consent. Furthermore, his affidavit contained extensive quantities of non-boilerplate information that, unlike the agent in <u>Mitchell</u>, Cearley drafted originally for this warrant application. Also present in this case, but absent in <u>Mitchell</u>, was evidence that Cearley was busy at the time, since he worked in a two-person office responsible for a broad geographic area.

To the extent that Laist suggests <u>Mitchell</u> announced either a bright-line rule or a presumption that any delay exceeding 21 days in a computer search case is unreasonable, <u>Mitchell</u> stands for no such proposition. This Court explained the test in these words:

> The reasonableness of the delay is determined "in light of all the facts and circumstances," and "on a case-by-case basis." <u>United States v. Mayomi</u>, 873 F.2d 1049, 1054 n.6 (7th Cir. 1989). "[T]he reasonableness determination will reflect a 'careful balancing of governmental and private interests.'" <u>Soldal v. Cook County</u>, 506 U.S. 56, 71, 113. S. Ct. 538, 121 L. Ed. 2d 450 (1992).

<u>Id.</u> at 1351.

The Seventh Circuit case quoted in that passage reinforces this idea. <u>See</u> <u>Mayomi</u>, 873 F.2d at 1054 n.6 ("We expressly decline to adopt the position of the Ninth

21

Circuit that Van Leeuwen 'created an outer limit of twenty-nine hours' for the warrantless detention of mail . . . . Such a position conflicts with the clear import of the Van Leeuwen holding that the reasonableness of such detentions must be evaluated in light of all the facts and circumstances. That is, on a case-by-case basis." (emphasis added)).  And in its conclusion, the Mitchell court took care to emphasize, "[W]e are applying a rule of reasonableness that is dependent on all of the circumstances." 565 F.3d at 1352. Mitchell never utilized the word presumption or established any bright-line rule for child pornography cases. Nor could we have done so, given the Supreme Court's unequivocal command that "rather than employing a per se rule of unreasonableness," we should "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable" under the facts of each case. McArthur, 531 U.S. at 331. These decisions are always based on the totality of the circumstances. Here, the totality of the circumstances confirms the district court's well-reasoned conclusion that Mitchell was fairly distinguishable and that the government's actions in this case were reasonable.

AFFIRMED.

22