[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13652

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TYRON WATSON,
a.k.a. SOSA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:20-cr-00026-AW-MAF-1

———————————————

Before WILLIAM PRYOR, Chief Judge, and JORDAN and LAGOA, Circuit Judges.

PER CURIAM:

Tyron Watson appeals his conviction for sex trafficking of a minor and knowingly benefitting from a venture to engage in sex trafficking of a minor. *See* 18 U.S.C. § 1591(a)(1)-(2) and (b)(1)-(2). Watson challenges the denial of his motion to suppress and the admission of extrinsic evidence about his previous sex trafficking under Federal Rule of Evidence 404(b). We affirm.

## I. BACKGROUND

A grand jury indicted Watson for sex trafficking of a minor and knowingly benefitting from a venture to engage in sex trafficking of a minor, 18 U.S.C. § 1591(a)(1)-(2) and (b)(1)-(2). Watson moved to suppress evidence seized from his cell phone. Officers seized Watson's cell phone and a hotel key card when they arrested him. The arrest stemmed from Detective Elizabeth Bascom's interview with J.D., a minor who had posted sexually explicit photographs online. J.D. stated that a man named "Sosa," Watson's alias, was involved in her sex trafficking. Watson argued that officers seized his phone without a warrant, probable cause, or consent and that no exception to the warrant requirement applied.

At a hearing on the motion to suppress, Detective Bascom testified that an investigator identified Watson as one of J.D.'s traffickers based on his Facebook page. In an interview, J.D. described

how Watson would post her photographs on websites and use a text messaging application to communicate with clients. Detective Bascom testified that, based on her training and experience, the "sex website" where J.D. was advertised, called "Skip the Games," was commonly accessed by cell phone. She also testified that it was common for individuals involved in trafficking to use cell phones because of their mobility and ability to take photographs and to send text messages. During her investigation, Detective Bascom discovered that Watson had an ankle monitor due to a pending state case involving commercial sex trafficking of a minor named L.T. Based on this information, Detective Bascom obtained a warrant for Watson's arrest for violations of state law.

Detective Bascom testified that the hotel where officers arrested Watson was a hub for prostitution and trafficking minors. When officers arrested Watson, they seized his phone because Detective Bascom believed she had probable cause to obtain a warrant for the phone. She did not search the phone before she obtained a warrant. Officers found a hotel key card on Watson's person. And officers later found Marlissa Rozier and a man who admitted to paying for sex with her in the hotel room linked to the key card. Detective Bascom testified that officers arrested Watson on a Friday night and that her priority the following week was preserving other evidence that could have been lost. She obtained a warrant for Watson's cell phone a week after his arrest. She did not believe Watson asked for his phone after his arrest.

On cross-examination, Detective Bascom stated that she was not sure whether J.D. or others had created advertisements for J.D. On redirect, Detective Bascom testified that before she obtained an arrest warrant police had matched information from Watson's ankle monitor to the locations where advertisements for J.D. had been placed. This discovery supported her view that she had probable cause that incriminating evidence about J.D. would be found on the phone. Police also found Rozier's debit card on Watson's person. In her experience, traffickers hold onto debit cards to pay for advertisements. She suspected that the evidence on the cell phone would have been lost if it had not been seized.

The district court denied Watson's motion to suppress. It ruled that there was probable cause to believe that the phone contained evidence of a crime based on J.D.'s statements that Watson used a phone to facilitate trafficking her, Detective Bascom's experience, and a client's admission to paying for sex in the hotel room to which Watson had the key. It explained that because Watson was carrying the phone when he was arrested, its seizure was lawful as a search incident to arrest. It also found that the exigent circumstances exception applied because a reasonable officer could have concluded that evidence would have been lost if the phone had been left at the scene. The district court concluded that the delay in applying for a search warrant was reasonable because Watson's possessory interest in the phone was substantially diminished due to his incarceration and failure to request that the phone be returned and based on the scope and nature of the investigation.

Before trial, the government notified Watson of its intent to introduce Rule 404(b) evidence of other women who worked under Watson's direction or observed him acting as a "pimp." It stated it intended to offer evidence from L.T., a minor engaged in prostitution, and Rozier, along with "other acts of prostitution." It stated that the evidence was relevant to the issue whether Watson had knowledge that J.D. would engage in a commercial sex act.

Watson moved *in limine* to exclude the Rule 404(b) evidence. Watson argued that the evidence was improper character evidence, that its probative value would be substantially outweighed by unfair prejudice, and that the notice was insufficient because it did not describe the specific extrinsic evidence. At a hearing on Watson's motion, the government explained that it intended to offer the evidence to prove opportunity, intent, lack of mistake, and identity. It stated that Watson regularly used social media to post advertisements of prostitutes in the same way he did for J.D. The district court ruled that the evidence was admissible for non-propensity purposes, that the government gave Watson fair notice, and that the probative value was not substantially outweighed by unfair prejudice.

At a pretrial conference, the government stated it would limit its use of extrinsic evidence to evidence about Rozier, L.T., and Mariah Poole. Watson conceded that the evidence would likely be admissible. The government stated that Poole would likely testify that Watson trafficked her and that she participated in

trafficking L.T. Following the pretrial conference, the district court denied Watson's motion *in limine*.

At trial, Watson renewed his objection to the extrinsic evidence. In his opening statement, he argued that he was not the person who trafficked J.D. Detective Bascom testified that J.D.'s advertisements were posted to the website "Skip the Games." Sergeant Chris Corbitt testified that J.D. was often present at a Motel 6 on North Monroe Street. Watson's ankle monitor placed him at the same motel at corresponding times. Watson was also often present at LaCasa Inn on North Monroe Street.

Javaris Brown, Rozier's client, testified about Rozier's advertisements on "Skip the Games" and meeting her at LaCasa Inn on North Monroe Street. Detective Paul Osborn, a case agent, testified regarding Watson's state offense for the commercial sex trafficking of L.T. He found photographs of Watson and L.T., L.T.'s bus ticket, L.T.'s advertisements on "Skip the Games," Rozier's advertisements on "Skip the Games," email confirmations from "Skip the Games," and emails of hotel receipts on Watson's phone. The government introduced those exhibits into evidence.

Poole, Watson's codefendant in the state case, testified that she met Watson at a motel on North Monroe Street. She explained that they posted advertisements of L.T. and herself on a website like "Skip the Games." Watson arranged to be at the hotels where she and L.T. were working. Watson made various objections to the evidence about L.T. as prejudicial, but the district court overruled those objections. The district court instructed the jury to consider

the evidence only for the purpose of determining whether Watson "had the state of mind or intent necessary to commit the crime charged in the indictment or . . . had a motive or the opportunity to commit the acts charged in the indictment."

The jury returned a guilty verdict on both counts. Watson moved for a new trial based on the admission of the Rule 404(b) evidence. The district court denied Watson's motion for a new trial and sentenced him to two life sentences to run concurrently.

## II. STANDARDS OF REVIEW

Two standards of review govern this appeal. When reviewing the denial of a motion to suppress, we review legal conclusions *de novo* and findings of fact for clear error, and we view the evidence in the light most favorable to the government. *United States v. Campbell*, 26 F.4th 860, 870 (11th Cir. 2022) (en banc). We also review the application of the law to the facts *de novo*. *Id*. We review the admission of Rule 404(b) evidence for abuse of discretion. *United States v. Perry*, 14 F.4th 1253, 1274 (11th Cir. 2021).

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that the district court did not err in denying Watson's motion to suppress. Second, we explain that the district court did not abuse its discretion by admitting extrinsic evidence about his previous sex trafficking offense conduct.

### A. The District Court Did Not Err in Denying Watson's Motion to Suppress Evidence from His Cell Phone

Watson argues that the district court erred by denying his motion to suppress the evidence collected from his cell phone for two reasons. Both arguments fail. We address each argument in turn.

Watson argues that no exception to the warrant requirement justified law enforcement's seizure of his phone. An officer may make a warrantless seizure of an object when there is probable cause to believe that it contains evidence of a crime and exigent circumstances exist. *United States v. Babcock*, 924 F.3d 1180, 1186 (11th Cir. 2019). "Probable cause to search exists where the facts lead a reasonably cautious person to believe that the search will uncover evidence of a crime." *United States v. Burgos*, 720 F.2d 1520, 1525 (11th Cir. 1983) (internal quotation marks omitted). Police officers may conclude there is probable cause based on their training and experience. *Ornelas v. United States*, 517 U.S. 690, 700 (1996). "Exigent circumstances" exist when there is probable cause "to believe that evidence will be removed or destroyed before a warrant can be obtained." *Babcock*, 924 F.3d at 1194. Exigent circumstances exist when the circumstances make it reasonable for an officer to conclude that a suspect has the ability and incentive to destroy incriminating evidence on his phone before a warrant can be obtained. *Id.* at 1194-95. Officers may also search the area within the control of a person incident to a lawful arrest. *Riley v. California*, 573 U.S. 373, 382–83 (2014). Although officials may seize a cell phone

to prevent the deletion of information, they must obtain a warrant to search its contents. *Id.* at 401.

The warrantless seizure was lawful based on exigent circumstances and as a valid search incident to arrest. Detective Bascom had probable cause to seize Watson's phone. J.D. stated that Watson would post photographs of her on websites and text them to clients. Detective Bascom stated that, in her experience, the website where J.D. was advertised was commonly accessed by cell phone. *See Ornelas*, 517 U.S. at 700. When officers arrested Watson, he was at a hotel associated with trafficking, holding the key card to a room where Rozier had met a client. So Detective Bascom reasonably believed that evidence of sex trafficking would be found on the phone. *See Burgos*, 720 F.2d at 1525. Exigent circumstances existed because a reasonable officer could conclude that Watson, as a suspect being arrested for child trafficking, and Rozier, also engaged in criminal activity, would delete information on the phone if it were left at the scene. *See Babcock*, 924 F.3d at 1194–95. Officers also seized the phone during a valid search incident to Watson's arrest and did not search his phone until they obtained a valid warrant. *See Riley*, 573 U.S. at 401. The district court did not err in ruling that the warrantless seizure was lawful based on exigent circumstances and as a valid search incident to arrest.

Watson also argues that the delay between the seizure and the government's eventual application for a search warrant was unreasonably lengthy. A lawful seizure may become unconstitutional when "police act with unreasonable delay in securing a warrant."

*United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009). "The reasonableness of the delay is determined in light of all the facts and circumstances, and on a case-by-case basis." *Id.* at 1351 (internal quotation marks omitted). When analyzing the reasonableness of the delay, we consider the interference with the person's possessory interest, the duration of the delay, whether the person consented, and the government's interest in holding the property as evidence. *United States v. Laist*, 702 F.3d 608, 613–14 (11th Cir. 2012). We also take officers' diligence in obtaining the warrant into account by considering the nature and complexity of the investigation, the quality of the warrant application, and any other evidence about their diligence. *Id.* at 614.

The delay between the seizure and when Detective Bascom secured the warrant was reasonable. Watson's significant possessory interest in his cell phone was diminished due to his incarceration and failure to request that the phone be returned. *See id.* at 613-14. A week-long delay was reasonable in the light of the scope and nature of the investigation. Officers obtained the phone on a Friday, and Detective Bascom gave priority to preserving other evidence that could have been lost the following week. Nothing in the record establishes that Detective Bascom was less than diligent in obtaining a warrant. *See id.* The government's interest in preserving evidence on the phone was significant because officers reasonably believed it contained evidence of child trafficking. *See id.* The district court did not err in ruling that the delay in obtaining a warrant was reasonable and denying Watson's motion to suppress.

*B.  The District Court Did Not Abuse its Discretion by Admitting Evidence of Watson's Prior Sex Trafficking*

Watson also argues that the district court abused its discretion by admitting extrinsic evidence about his previous sex trafficking offense under Rule 404(b) because it was not offered for a permissible purpose and its probative value was substantially outweighed by its unfair prejudice. He also argues that the government's notice was insufficient. Both arguments fail.

Evidence of any other crime, wrong, or act is not admissible to prove a person's character, but it may be admissible to prove opportunity, intent, identity, or absence of mistake. Fed. R. Evid. 404(b). To be admissible under Rule 404(b), evidence must be relevant to an issue other than the defendant's character, be supported by sufficient evidence to allow a jury to find that the defendant committed the act, and not be unduly prejudicial under Rule 403 such that its probative value is substantially outweighed by undue prejudice. *United States v. Edouard*, 485 F.3d 1324, 1344 & n.8 (11th Cir. 2007). The first part of this test is satisfied "where the state of mind required for the charged and extrinsic offenses is the same." *Id.* at 1345. It is also satisfied when evidence is introduced to prove identity, and the offenses are similar such that the evidence establishes a "modus operandi." *United States v. Whatley*, 719 F.3d 1206, 1217 (11th Cir. 2013). As to the third part, we consider whether the defendant contested the issue of intent, the similarity between the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses. *Edouard*, 485 F.3d at 1345.

The district court did not abuse its discretion in admitting the extrinsic evidence, which was used for a permissible purpose. Watson's involvement with L.T., Rozier, and Poole was relevant to prove his intent and identity in trafficking J.D. The state of mind for his state offense of commercial sex trafficking of a minor and the instant case was the same. *See id.* Moreover, the similarities between Watson's conduct in trafficking Rozier, L.T., and Poole corroborated his identity. *See Whatley*, 719 F.3d at 1217. When trafficking Rozier, L.T., and Poole, Watson used "Skip the Games" or a similar website to post advertisements as he did with J.D. He also used hotels on North Monroe Street and waited outside those hotels for L.T., Rozier, and Poole as he did with J.D. *See id.*

Moreover, the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice. Watson contested his intent and identity at trial. The prior conduct was like Watson's conduct in trafficking J.D., thereby maximizing its probative value. The conduct involving L.T. occurred only five years before the instant offense, and Rozier was part of Watson's later arrest, so the conduct was close in temporal proximity. *See Edouard*, 485 F.3d at 1345. Additionally, the district court provided a limiting instruction, which mitigated any prejudice. *See id.* at 1346 (holding any unfair prejudice can be mitigated by a limiting instruction). Rule 404(b) "is a rule of inclusion," and the district court did not abuse its discretion in admitting the extrinsic evidence. *See United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009).

Watson also argues that the Rule 404(b)(3) notice was insufficient. Prosecutors must provide reasonable notice of the evidence of other crimes or wrongs they intend to offer to allow the defendant a fair opportunity to meet it, they must articulate the permitted purpose for which they intend to offer the evidence, and they must provide the notice in writing before trial. Fed. R. Evid. 404(b)(3). We review a failure to provide sufficient notice for harmless error. *United States v. Fey*, 89 F.4th 903, 911 (11th Cir. 2023). In *Fey*, we held that the failure to provide sufficient notice under Rule 404(b)(3) was harmless because the defendants were given notice of the relevant evidence "well before trial." *Id.* at 911–12.

The notice regarding extrinsic evidence was sufficient. The initial notice stated that prosecutors would present evidence about L.T. and Rozier to prove Watson's knowledge and intent. *See* Fed. R. Evid. 404(b)(3). Although prosecutors added permissible purposes, such as identity, at a later hearing and stated, during a pretrial conference, that they would use Poole's testimony, those additions occurred months before Watson's trial. Even if the initial notice was insufficient for failing to outline the new purposes and testimony, any error was harmless. *See Fey*, 89 F.4th at 911–12.

## IV. CONCLUSION

We **AFFIRM** Watson's conviction.