[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-10377

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DAVID ALAN QUARLES,
a.k.a. D,
a.k.a. D Money,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 8:21-cr-00013-TPB-AEP-1

————————————

Before JORDAN, LAGOA, and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, David Alan Quarles appeals his convictions for multiple human trafficking and sex offenses, including (1) sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a), (b)(1) and (b)(2); (2) importing an alien for prostitution, in violation of 8 U.S.C. § 1328 and 18 U.S.C. § 2; (3) transporting for purposes of prostitution, in violation of 18 U.S.C. §§ 2421 and 2; (4) using a facility in interstate or foreign commerce to aid an illegal activity, namely prostitution, in violation of 18 U.S.C. §§ 1952(a)(3)(A) and 2; (5) attempted sex trafficking of a child, in violation of 18 U.S.C. §§ 1594(a), 1591(a)(1) and (b)(2), and 2; and (6) conspiring to commit certain offenses against the United States, in violation of 18 U.S.C. § 371.

On appeal, Quarles raises no issues as to his trial or his 420-month total sentence. Instead, Quarles argues only that the district court erred in denying his pretrial motion to suppress evidence found during a border search of his cellphone. After review of the record and the briefs, we conclude that the district court did not err in denying Quarles's motion to suppress and affirm his convictions.

## I.     BACKGROUND

### A.     Coast Guard Investigation of Quarles

In March 2019, the Coast Guard Investigative Service ("CGIS") was investigating Quarles for suspected human trafficking of a victim being transported from Michigan to Florida. In particular, based on a tip, a CGIS special agent in Michigan suspected that a Coast Guard petty officer had arranged for the transport of the victim with Quarles. Quarles had paid for the victim's bus ticket from Michigan to Tampa, so that the victim could be used for prostitution.

The CGIS entered a record of Quarles and Kate Krzeminska, his associate and girlfriend, into a law enforcement database. Their entry into the database notified other law enforcement agencies they were being investigated and set an alert if Quarles or Krzeminska traveled outside of, or returned to, the United States.

On April 20, 2019, Quarles, Krzeminska, and their son departed on an international cruise from Port Canaveral, Florida. After their departure, a request was made in the database to search Quarles and Krzeminska's electronic devices once they arrived back in the United States.

### B.     Border Search of Quarles's Cell Phone

On April 27, 2019, the cruise ship returned to Port Canaveral. Once the ship docked, Customs and Border Protection ("CBP") officers, a CGIS officer, and a Homeland Security Investigations ("HSI") special agent boarded the ship, went to

Quarles's cabin, and escorted Quarles and Krzeminska off the cruise ship to a secondary inspection location. The investigators seized Quarles's and Krzeminska's cell phones. Both Quarles and Krzeminska provided the investigators with the passwords for their devices.

The investigators performed a physical inspection of the cell phones. They observed, and took photographs of, text messages that were indicative of human trafficking, including references in messages on both phones to posting on websites frequently used to advertise commercial sex acts. A text message sent from Quarles's phone seemed to advise the recipient not to stop and work in Oklahoma, where posting on such websites was a felony that required a "10,000 dollar bond." Krzeminska's phone contained text messages (1) arranging visits at hotels in different states, (2) advising potential customers how to find her ads on websites, and (3) indicating how much she charged per hour for "in-calls" and "out-calls," terms frequently used in the commercial sex trade. Quarles's and Krzeminska's cell phones were detained at 9:30 AM.

That same day, a computer forensic analyst at HSI's Cocoa Beach office reported to the cruise terminal at Port Canaveral and performed an extraction of the cell phones.[1] An extraction makes

---

[1]At the suppression hearing, Special Agent Jessica Hurak was unsure whether the April 27 extraction attempt was successful. But at trial, the computer forensic analyst in the HSI Cocoa Beach office testified that he was able to perform the extraction.

"an exact copy, bit-by-bit copy of the content of the actual phone," including "text messages, phone calls, phone logs, apps" and "deleted files from the phone." From April 27, 2019 to May 16, 2019, HSI's Cocoa Beach office maintained custody of Quarles's cell phone.

## C.    Transfer of Investigation to Homeland Security

The CGIS agent assigned to the case received and reviewed the material from the April 27, 2019 extraction and realized the case was "rather substantial" and included crimes outside the "maritime domain." After concluding HSI was better positioned to investigate, CGIS contacted HSI, which became the lead investigative agency.

On May 15, 2019, Special Agent Jessica Hurak in HSI's Tampa office took over the investigation, and custody of Quarles's cell phone was transferred to her on May 17. Special Agent Hurak gave Quarles's cell phone to computer forensic agents to hold while, at the request of the prosecutor assigned to the case, she obtained a search warrant for the cell phone. On May 21, Special Agent Hurak completed her warrant affidavit. On June 13, a magistrate judge in Tampa issued a search warrant for Quarles's phone. Pursuant to the search warrant, a second extraction was performed on Quarles's phone.

## D.    Motion to Suppress

Prior to trial, Quarles filed a motion to suppress "all evidence obtained from [his] cell phone because the seizure was without a warrant and otherwise lacked probable cause or even reasonable

suspicion."[2] Quarles asserted that (1) the warrantless border search of his cell phone was unconstitutional, and (2) even if "the seizure was reasonable, the length of the detention [of his cell phone] was unreasonable, and any information obtained as a result should be suppressed."

On August 10, 2022, the district court held a hearing on Quarles's motion to suppress. The government presented: (1) Special Agent Hurak's testimony about the above events, (2) pictures of text messages from the physical inspection of Quarles's and Krzeminska's cell phones, and (3) the CBP detention notice and custody receipt for Quarles's detained cell phone. Both parties presented argument.

On August 28, 2022, the district court denied Quarles's motion. Citing *United States v. Touset*, 890 F.3d 1227, 1232 (11th Cir. 2018), the district court found that neither probable cause nor reasonable suspicion was required for investigators to search Quarles's cell phone at the border. The district court also noted that "even if some level of suspicion was required to support the search of [Quarles's] cell phone, the search would have certainly been supported by reasonable suspicion, if not probable cause."

As to the time to obtain a search warrant, the district court concluded that (1) the delay, which "did not exceed 47 days," was

---

[2] Quarles's motion to suppress challenged only the search and seizure of his own cell phone and not that of his girlfriend Krzeminska.

not unreasonable, and (2) in any event, the good faith exception to the exclusionary rule would preclude suppression.

## E.    Conviction and Sentence

At trial, the government presented the evidence obtained from Quarles's cell phone as part of its case. After the jury found Quarles guilty, the district court imposed a total 420-month prison sentence.[3]

## II.    STANDARD OF REVIEW

We review rulings on motions to suppress under a mixed standard of review, reviewing the district court's findings of fact for clear error and the district court's application of law to those facts *de novo*. *Touset*, 890 F.3d at 1231. "We review the entire record, including trial testimony, not just the record made at the suppression hearing." *United States v. Harden*, 104 F.4th 830, 833 (11th Cir. 2024) (quotation marks omitted and alteration adopted). We construe all facts "in the light most favorable to the prevailing party below." *Touset*, 890 F.3d at 1231 (quotation marks omitted). "And the individual challenging the search bears the burdens of proof and persuasion." *Id.* (quotation marks omitted and alterations adopted).

---

[3] The district court imposed (1) 60-month sentences for Quarles's 18 U.S.C. § 371 conspiracy conviction (Count One) and his two convictions for using a facility in interstate commerce (Counts Six and Nine), (2) 120-month sentences for his three prostitution offenses (Counts Three, Five, and Seven), and (3) 420-month sentences for his three sex-trafficking offenses (Counts Two, Four, and Ten), all to be served concurrently.

## III.    DISCUSSION

### A.    Border Search of the Cell Phone

Generally, the Fourth Amendment requires that officers obtain a warrant supported by probable case before conducting a search.  U.S. Const. amend. IV.  However, the Supreme Court has long recognized a border-search exception to the Fourth Amendment's probable cause and search warrant requirement.  *See United States v. Ramsay*, 431 U.S. 606, 616-19 (1977).  Under that exception, border searches "without probable cause and without a warrant are nonetheless 'reasonable'" by virtue of "the single fact that the person or item in question ha[s] entered into our country from the outside."  *Id.* at 619; *see also United States v. Vergara*, 884 F.3d 1309, 1312 (11th Cir. 2018).

Applying *Ramsay*'s border-search exception, this Court in *Vergara* concluded that a forensic search of a cell phone at the border "required neither a warrant nor probable cause."  *Id.* at 1312-13 (declining to address whether reasonable suspicion is required because the district court found that reasonable suspicion existed for the search).  Subsequently, in *Touset*, this Court concluded "that the Fourth Amendment does not require any suspicion for forensic searches of electronic devices at the border." *United States v. Touset*, 890 F.3d 1227, 1231 (11th Cir. 2018).  In both *Vergara* and *Touset*, this Court stressed that reasonable suspicion at the border is required only "'for highly intrusive searches of a person's body'" such as a strip search or an x-ray examination.  *Id.*

at 1234 (quoting *United States v. Alfaro-Moncada*, 607 F.3d 720, 729 (11th Cir. 2010)); *Vergara*, 884 F.3d at 1312.

On appeal, Quarles argues that (1) the border-search exception applies only to cell phone searches for *contraband*, (2) the searches in *Vergara* and *Touset* were for child pornography, and (3) border searches of cells phones for *evidence of criminal activity* still require a warrant, citing *Riley v. California*, 573 U.S. 373 (2014). The Supreme Court in *Riley* held that a police officer's (non-border) search of an arrestee's cell phone did not fall within the search-incident-to-arrest exception and instead required probable cause and a warrant. 573 U.S. 373, 386, 395-96 (2014). Quarles argues that *Riley* reached this conclusion "based on the significant privacy interests" people have in the contents of their cell phones, which justifies treating cell phones differently than other property even at the border.

As Quarles acknowledges, his arguments are foreclosed by our precedent in *United States v. Pulido*, 133 F.4th 1256 (11th Cir. 2025), our most recent cell phone border-search decision. Like Quarles, the defendant in *Pulido* relied on *Riley* to argue that cell phone searches should be treated differently because (1) "searching a cell phone is so intrusive of a person's privacy that it (in effect) warrants an exception to the border-search exception" and (2) "searching private text messages on a person's devices exceeds the historical justification for the border-search exception—namely, detecting contraband—and, therefore, that the exception's

indulgent reasonableness rule should not apply." *Pulido*, 133 F.4th at 1274.

The *Pulido* Court explained that these *"Riley*-based arguments" were already expressly rejected in *Vergara* and *Touset*. *Id.* Specifically, "*Vergara* made clear that *Riley*, which involved the search-incident-to-arrest exception, does not apply to searches at the border," and *Touset* established that the search of "data stored on electronic devices" did not involve the kind of intrusiveness— which is a "function of . . . personal indignity"—that requires reasonable suspicion. *Id.* (quotation marks omitted). "Simply put, we said [in *Touset*] that property and persons are different." *Id.* (alteration adopted, quotation marks omitted)). The *Pulido* Court also concluded that *Vergara* and *Touset* foreclosed the argument, which Quarles also makes, that the scope of the border-search exception "is limited by the government's sovereign interest in excluding contraband from the country." *Id.* ("Neither opinion purports to restrict the operation of the border-search exception to searches for contraband.").

Under our prior panel precedent rule, we are bound by *Pulido*. *See United States v. Romo-Villalobos*, 674 F.3d 1246, 1251 (11th Cir. 2012). Based on *Pulido*, *Vergara*, and *Touset*, we conclude that the district court did not err in denying Quarles's motion to suppress.

## B.    Delay in Obtaining a Search Warrant

Alternatively, Quarles contends that the government's 47-day seizure of his cell phone—from April 27 to the June 13 search pursuant to a search warrant—was unreasonable.

An otherwise lawful seizure can violate the Fourth Amendment if law enforcement acts with unreasonable delay in securing a search warrant. *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) (explaining that an unreasonable delay in obtaining the search warrant is unconstitutional because its manner of execution unreasonably "infringes possessory interests" the Fourth Amendment protects). "Thus, when determining whether a delay renders a seizure unreasonable under the Fourth Amendment, we evaluate the totality of the circumstances presented in each case," balancing "the privacy-related and law-enforcement-related concerns." *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012).

This Court has identified some relevant factors to consider in determining whether a post-seizure delay is unreasonable, including: (1) the significance of the interference in the person's possessory interest; (2) the duration of the delay; (3) whether the person consented to the seizure; (4) the government's legitimate interest in holding the property as evidence; and (5) whether the police diligently pursued their investigation. *See id.* at 613-14. As to the fifth factor, we consider the nature and complexity of the investigation, whether circumstances arose that required the diversion of government personnel, the amount of time we expect

such a warrant would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant. *Id*. at 614. Given that "this balancing calculus is fact-intensive," in one instance "a delay as short as 90 minutes may be unreasonable" and in another instance "a delay of over three months may be reasonable." *Id*.

As the government points out, Quarles does not cite any authority in which a prolonged delay after a border seizure was found to violate the Fourth Amendment because of the government's delay in seeking a search warrant or in performing a search. But even assuming *arguendo* for purposes of this appeal that under some circumstances an unreasonable delay claim may be viable in the border-search context, we agree with the district court that, under the totality of the circumstances present in this case, the delay was not unreasonable.

While Quarles had a possessory interest in his cell phone, it was diminished somewhat by the facts that (1) he provided his password to the investigators at Port Canaveral, and (2) he does not claim to have ever requested his cell phone's return. *See United States v. Johns*, 469 U.S. 478, 487 (1985) (stating that failing to request the return of seized property undermined the argument that a delay adversely affected Fourth Amendment rights).

Meanwhile, the government's reasons for continuing to detain Quarles's cell phone were compelling. Both the physical inspection and the initial forensic extraction of Quarles's cell phone occurred at Port Canaveral on April 27, 2019, the same day the

phone was seized.    That physical inspection, along with the physical inspection of Krzeminska's cell phone, revealed text-message evidence indicating that Quarles was engaged in sex trafficking via the Internet and used his cell phone in furtherance of that activity.  At that point, the government had a strong interest in holding Quarles's cell phone as evidence of criminal activity.

Furthermore, the evidence gathered from the physical inspection also justified retaining Quarles's cell phone while awaiting the results of the April 27 extraction from the forensic analyst in HSI's Cocoa Beach office.  Then, upon reviewing the extraction report, the CGIS special agent determined, based on the substantial scope of Quarles's criminal activity, that the investigation should be transferred to HSI, which was done on May 15, 2019.  This Court has recognized that one possible justification for a delay is "if the assistance of another law enforcement officer ha[s] been sought." *See Mitchell*, 565 F.3d at 1352-53.

By May 17, 2019, HSI Special Agent Hurak had received Quarles's phone and promptly turned it over to her own forensic analysts.  Unaware that the phone already had been successfully extracted on April 27, Special Agent Hurak, in an abundance of caution, sought a search warrant before directing the forensic analysts to perform another extraction on June 13.  Under these circumstances, including the transfer of the investigation from one agency to another, Quarles has not shown a lack of diligence.

Quarles relies heavily on *Mitchell*, but that case is materially different.  In *Mitchell*, two agents conducted a "knock and talk" at

the defendant's home after the defendant was identified as "a possible target" during a child pornography investigation. 565 F.3d at 1348-49. The defendant admitted to the agents that child pornography "probably" was on his desktop computer. *Id.* at 1349. One agent seized the desktop computer's hard drive, but did not prepare a search warrant application for three weeks. *Id.* at 1349, 1351. At the suppression hearing, the agent explained that three days after seizing the hard drive, he travelled out of state to attend a two-week training program without asking for another agent's assistance because he "didn't see any urgency." *Id.* at 1351.

In concluding the 21-day delay was unreasonable, the *Mitchell* Court emphasized that: (1) despite the defendant's "probably" admission, the agent could not be certain that the hard drive contained child pornography until it was examined and would have been obligated to return the hard drive if it revealed nothing incriminating; and (2) there was "no reason why another agent . . . could not have been assigned the task" while the agent was at the training program. *Id.* at 1351-52. Thus, the *Mitchell* Court concluded the agent's excuse for the delay—that "[n]o effort was made to obtain a search warrant" because he "simply believed there was no rush"—was insufficient. *Id.* at 1352, 1353.

Here, unlike in *Mitchell*, the agents knew before they took Quarles's cell phone away for further investigation that it contained incriminating evidence. During their physical inspection of Quarles's cell phone at Port Canaveral, the agents saw and photographed Quarles's text messages indicating he was engaged

in sex trafficking on the Internet and knew at that point that the phone had evidentiary value that justified holding it. Then, the results of the first extraction showed a broader scope of criminal activity than the CGIS originally suspected. This discovery prompted a transfer from CGIS to HSI, where, in an abundance of caution, the new investigating agent sought a search warrant rather than rely upon the border-search exception for a second extraction of the phone. And, finally, there was no evidence that any of the agents involved in investigating the contents of Quarles's phone, whether with the CGIS or HSI, showed the kind of cavalier indifference or lack of effort on display in *Mitchell*.

As the Court in *Mitchell* stressed, it was not creating a bright line rule, but rather applying a "rule of reasonableness that is dependent on all of the circumstances." *Id.* at 1352. Based on the particular facts and circumstances presented here, the 47-day delay in obtaining a search warrant so that Quarles's phone could be forensically searched a second time did not render the phone's seizure unreasonable. *See Laist*, 702 F.3d at 613-14.

## IV.    CONCLUSION

For these reasons, the district court properly denied Quarles's motion to suppress. Accordingly, we affirm Quarles's convictions.

**AFFIRMED.**